**Sherman GOTTLIEB, Plaintiff–Appellant,**

**v.**

**CARNIVAL CORPORATION, Defendant–Appellee.**

**No. 05–2733 CV.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 19, 2005.

Decided: Feb. 3, 2006.

Andre K. Cizmarik (Anthony J. Viola, on the brief), Edwards Angell Palmer & Dodge LLP, New York, NY, for Plaintiff–Appellant.

Joseph J. Saltarelli, Hunton & Williams LLP, New York, NY, for Defendant–Appellee.

Before: OAKES, SOTOMAYOR, and WESLEY, Circuit Judges.

SOTOMAYOR, Circuit Judge.

This case presents the question of whether federal courts have diversity jurisdiction over private causes of action brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff-appellant Sherman Gottlieb ("Gottlieb") appeals from a judgment of the United States District Court for the Eastern District of New York (Glasser, J.), entered on May 3, 2005, dismissing his claims under the TCPA for lack of subject matter jurisdiction and dismissing his parallel state law claims for lack of supplemental jurisdiction. Relying primarily on this Court's decision in *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.*, 156 F.3d 432 (2d Cir.1998), where we held that Congress intended to divest the federal courts of federal question jurisdiction over private TCPA claims, the district court concluded that "jurisdiction over TCPA claims resides in the state courts exclusively" and that federal courts lack diversity jurisdiction over such claims. *Gottlieb v. Carnival Corp.*, 367 F.Supp.2d 301, 307 (E.D.N.Y. 2005). The district court reasoned that "it must be assumed that [the Second Circuit] used its words carefully and advisedly" when we stated in *Foxhall* that state courts have "exclusive jurisdiction" over TCPA claims. *Id.* at 309. Our ruling in *Foxhall*, however, related only to the exis-

tence of federal question jurisdiction over private TCPA claims; we did not consider in that case whether federal courts have diversity jurisdiction over such claims.[1] We hold here that Congress did not divest the federal courts of diversity jurisdiction over private actions under the TCPA. We thus vacate the judgment of the district court and remand the case for further proceedings.

## BACKGROUND

The following facts are taken from Gottlieb's complaint.

Gottlieb is a travel agent who works from his home in Staten Island, New York. In connection with his work, he has a fax machine associated with two telephone numbers. Between early 2001 and 2004, Gottlieb received, via his fax machine, over 1000 unsolicited advertisements from Carnival Corporation ("Carnival"), a company organized under the laws of Panama and having its principal place of business in Florida. Gottlieb continued receiving faxes from Carnival even though he sent Carnival written instructions, via facsimile, requesting that they cease sending him unsolicited advertisements. He also contacted the telephone number listed on those advertisements to request that his fax numbers be removed from Carnival's list. In 2002, Carnival began including the following language on the bottom of its faxes: "Carnival does not endorse nor authorize the practice of blast faxing or unsolicited faxing of any materials promoting Carnival or its products."

In Count One of his complaint,[2] Gottlieb seeks statutory damages of $500 under the

1. As noted by the district court, *see* 367 F.Supp.2d at 309, the parties in *Foxhall* had diverse citizenship, but whether the case met the requirements of 28 U.S.C. § 1332 was not before the Court. Moreover, although the plaintiff in *Foxhall* had filed a putative class action, it alleged in its complaint only that it

had received one unsolicited advertisement. 156 F.3d at 434.

2. All references to the "complaint" are to the amended complaint filed on November 17, 2004.

TCPA for each of the approximately 1000 unsolicited fax advertisements he received from Carnival. In Count Two, he alleges that Carnival acted "knowingly and willfully" and seeks treble damages for each statutory violation. In Count Three, he seeks injunctive relief under the TCPA. Finally, in Count Four, Gottlieb seeks statutory damages of $100 for each fax sent by Carnival in violation of New York General Business Law § 396–aa, a parallel New York statute.

## DISCUSSION

The TCPA prohibits, *inter alia,* the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" absent certain conditions not present here. 47 U.S.C. § 227(b)(1)(C). Section 227(b)(3) provides a private right of action under the statute and states that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action for injunctive relief or damages. Section 227(b)(3) further establishes damages of $500 for each violation of the statute and treble damages if the defendant violates the statute "willfully or knowingly."

This Court concluded in *Foxhall* that state courts have "exclusive" jurisdiction over private actions under the TCPA and held that, pursuant to 28 U.S.C. § 1331, federal courts lack federal question jurisdiction over such claims. 156 F.3d at 435. We emphasized in *Foxhall* the language of § 227(b)(3) providing that a person "may" bring an action in state

court. Central to our reasoning was the fact that state courts are courts of general jurisdiction, and therefore no express grant of jurisdiction is required to confer concurrent jurisdiction on state and federal courts. *Id.* By contrast, "federal courts are courts of limited jurisdiction which thus require a specific grant of jurisdiction." *Id.* We reasoned that the permissive authorization in the statute extending only to courts of general jurisdiction was significant. In order to give effect and meaning to every provision of the statute, we joined several other federal courts of appeals and held that "Congress intended to confer exclusive state court jurisdiction over private rights of action under the TCPA." *Id.* In brief, we concluded that the statutory language constituted a specific expression of congressional intent that trumped the more general grant of federal question jurisdiction in § 1331. *Id.* at 436.

We did not consider in *Foxhall* whether Congress intended that federal courts have diversity jurisdiction over private TCPA claims. Our discussion of "exclusive jurisdiction" in *Foxhall* must be read in context. *Foxhall* dealt only with federal question jurisdiction; diversity jurisdiction was not raised in *Foxhall.*[3] Our ruling in *Foxhall* thus does not govern the resolution of this case.

This case presents a question of statutory construction. Statutory analysis begins with the text and its plain meaning, if it has one. *See Natural Res. Def. Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir.2001). If a statute is ambiguous, we resort to the canons of statutory construction to help resolve the ambiguity. *Id.*

---

**3.** To state the obvious, federal courts have subject matter jurisdiction either on the basis of substance, where there is a federal question, or on the basis of citizenship, where the requirements for diversity jurisdiction are satisfied. Our use of the word "exclusive" in *Foxhall* meant only that state courts have exclusive *substance-based* jurisdiction over private TCPA claims. *Foxhall* did not speak to the existence of citizenship-based, or diversity, jurisdiction.

Finally, "[w]hen the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history." *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir.2000).

Nothing in § 227(b)(3), or in any other provision of the statute, expressly divests federal courts of diversity jurisdiction over private actions under the TCPA. Because the statute is ambiguous, however, we consider the two canons of statutory construction that are most helpful to our interpretation of the TCPA. First, when determining the meaning of a statutory provision, "the text should be placed in the context of the entire statutory structure." *Natural Res. Def. Council*, 268 F.3d at 98. "[A] statute is to be considered in all its parts when construing any one of them." *Dauray*, 215 F.3d at 262 (citation and internal quotation marks omitted; alteration in original). "Normally, a statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless." *Allen Oil Co., Inc. v. Comm'r*, 614 F.2d 336, 339 (2d Cir.1980). Second, "[b]ackground principles of law in effect at the time Congress passes a statute can be useful in statutory interpretation." *United States v. Kerley*, 416 F.3d 176, 181 (2d Cir.2005); *see also* 2B Norman J. Singer, Sutherland Statutory Construction § 53:1 ("Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum.").

### 1. *Statutory Structure*

The statutory analyses of the TCPA in earlier cases do not directly pertain to diversity jurisdiction, but they nonetheless inform our interpretation of the statute. Both this Court in *Foxhall* and the Fourth Circuit in *International Science and Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir. 1997), the leading case to have held that courts lack federal question jurisdiction over private TCPA claims, emphasized the statutory structure of the TCPA and the Communications Act of 1934 ("the 1934 Act"). Both courts found it "significant" that, in § 227(f)(2) of the TCPA, Congress vested "exclusive jurisdiction" in the federal courts over actions brought by state attorneys general on behalf of state residents.[4] *Foxhall*, 156 F.3d at 436; *Int'l Sci.*, 106 F.3d at 1152. The Fourth Circuit noted that "Congress wrote precisely, making jurisdictional distinctions in the very same section of the Act by providing that private actions may be brought in appropriate state courts and that actions by the states must be brought in the federal courts." 106 F.3d at 1152. Section 227(f)(2), however, limits only the jurisdiction of state courts, not the independent jurisdiction of federal courts. Moreover, Congress's explicit investiture of "exclusive jurisdiction" in the federal courts in § 227(f)(2) indicates that in § 227(b)(3), which does not include such language, Congress did not similarly vest categorical, "exclusive" jurisdiction in state courts for private TCPA claims, and therefore did not divest federal courts of both federal question and diversity jurisdiction.

Both this Court in *Foxhall* and the Fourth Circuit also found it significant that Congress explicitly provided for concurrent federal and state court jurisdiction in other parts of the 1934 Act, but not in § 227(b)(3).[5] *Foxhall*, 156 F.3d at 436;

---

**4.** As relevant here, § 227(f)(2) provides that "[t]he district courts of the United States ... shall have exclusive jurisdiction over all civil actions brought under this subsection."

**5.** The Fourth Circuit identified each of these provisions of the 1934 Act:

Congress provided explicitly for *concurrent* jurisdiction [in other parts of the Communi-

*Int'l Sci.*, 106 F.3d at 1152. We reject the argument that Congress's failure to provide explicitly for concurrent jurisdiction in § 227(b)(3) means that the provision precludes federal courts from exercising diversity jurisdiction over private TCPA claims. When used in or to describe federal statutes, the term "concurrent jurisdiction" refers to state-court jurisdiction over cases arising under federal law. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 & n. 4, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) (noting the long-standing rule that state courts have concurrent jurisdiction over federal claims and its importance prior to the creation of general federal-question jurisdiction in 1875); *see also Hathorn v. Lovorn*, 457 U.S. 255, 266, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982) (acknowledging the presumption that state courts enjoy concurrent jurisdiction over federal questions). The provisions of the 1934 Act that establish concurrent jurisdiction do not give any indication of varying from this rule. *See* n. 5, *infra*. Thus, Congress's explicit provision for concurrent jurisdiction in other parts of the 1934 Act concerns the existence of federal question jurisdiction, not diversity jurisdiction, and Congress's failure to provide explicitly for concurrent jurisdiction in § 227(b)(3) has no bearing on its intent with respect to diversity jurisdiction.

Just as nothing in the language of § 227(b)(3) expresses a congressional in-tent to divest the federal courts of diversity jurisdiction under § 1332 over private actions under the TCPA, nothing in the statutory structure indicates that intent. It is consistent with both the statutory language and the structure of the TCPA and the 1934 Act to interpret: (1) those provisions of the 1934 Act authorizing concurrent jurisdiction to confer federal question and state-court jurisdiction; (2) § 227(f)(2) to confer exclusive federal jurisdiction over actions brought by the states; and (3) § 227(b)(3) to confer federal diversity and state-court jurisdiction over private claims. We find this to be the most reasonable interpretation of the statute.

### 2. *Background Principles*

Our conclusion is confirmed by reference to the background principles in effect at the time Congress passed the TCPA. The Supreme Court has indicated that Congress legislates against the backdrop of existing jurisdictional rules that apply unless Congress specifies otherwise. *See Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 506–07, 20 S.Ct. 726, 44 L.Ed. 864 (1900) (holding that where the statute did not specify which courts had jurisdiction, "it unquestionably meant that the competency of the court should be determined by rules theretofore prescribed in respect to the jurisdiction of the Federal courts"). The question, then, is whether diversity

cations Act] when it so intended. *See* 47 U.S.C. § 214(c) (authorizing injunction by *any court of general jurisdiction* for extension of lines or discontinuation of services contrary to certificates of public convenience and necessity); 47 U.S.C. § 407 (authorizing suit *in federal court or state court of general jurisdiction* for common carrier's failure to comply with order of payment); 47 U.S.C. § 415(f) (establishing one-year statute of limitation on suits brought *in federal or state courts* to enforce Commission order for payment of money); 47 U.S.C. § 553(c)(1) (authorizing suit *in federal court or any other court of competent jurisdiction* for unauthorized cable reception); 47 U.S.C. § 555(a) (authorizing suit *in federal court or state court of general jurisdiction* to review actions by franchising authority); 47 U.S.C. § 605(e)(3)(A) (authorizing civil action *in federal court or any other court of competent jurisdiction* for unauthorized publication).
*Int'l Sci.*, 106 F.3d at 1152 (emphasis in original).

jurisdiction may be presumed to apply to federally-created causes of action unless Congress has made a clear statement otherwise. That is, if diversity jurisdiction is not presumed for federally-created causes of action, the statutory ambiguity in § 227(b)(3) should be resolved by concluding that federal courts do not have diversity jurisdiction over private actions under the TCPA. On the other hand, if § 1332 is an independent grant of federal jurisdiction intended to prevent discrimination against non-citizen parties regardless of whether state or federal substantive law is involved, then diversity jurisdiction is presumed to exist for all causes of action so long as the statutory requirements are satisfied. In that event, § 1332 must itself be explicitly abrogated by Congress, and § 227(b)(3) is not a clear statement of Congressional intent to deprive federal courts of diversity jurisdiction.

A plausible argument against finding diversity jurisdiction over private TCPA claims is that such jurisdiction is not presumed over rights of action created by federal statutes. Such statutes, the argument goes, typically give rise to federal question jurisdiction and concurrent jurisdiction in the state courts, but not diversity jurisdiction. Where Congress expresses the intent that a federal statute creating a private right of action not give rise to federal question jurisdiction, the argument continues, the only remaining jurisdiction lies in the state courts. Under this analysis, Congress must explicitly state that a federally-created right of action gives rise to diversity jurisdiction; in the absence of such a clear statement, federal jurisdiction will be found lacking if there is no federal question jurisdiction.

While the argument is intriguing, it is not persuasive. Nothing in § 1332 limits its application to state-law causes of action; in fact, the diversity statute gives federal courts original jurisdiction "of all civil actions" where there is diversity of citizenship and the amount-in-controversy requirement is satisfied. 28 U.S.C. § 1332(a). We thus reject the argument that federally-created causes of action do not give rise to diversity jurisdiction. Although the TCPA is an anomalous statute, creating a private right of action over which federal courts lack federal question jurisdiction, nothing in § 1332 indicates that diversity jurisdiction does not exist where federally-created causes of action are concerned. Moreover, the usual admonition that the diversity statute must be strictly construed against intrusion on the right of state courts to decide their own controversies, see *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76–77, 62 S.Ct. 15, 86 L.Ed. 47 (1941), is not relevant when a federally-created cause of action is at issue. Thus, we see no reason to resolve the statutory ambiguity by finding diversity jurisdiction not to exist in this case.

■ We think the better course is to proceed according to the rule that § 1332 applies to all causes of action, whether created by state or federal law, unless Congress expresses a clear intent to the contrary. Understanding § 1332 to apply presumptively to all causes of action, we acknowledge the well-established principle of statutory construction that repeal or amendment by implication is disfavored. See, e.g., *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 808, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Rosencrans v. United States*, 165 U.S. 257, 262, 17 S.Ct. 302, 41 L.Ed. 708 (1897) ("When there are statutes clearly defining the jurisdiction of the courts, the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation."). Here, there is no clear statement of congressional intent to

divest the federal courts of diversity jurisdiction over private TCPA claims.[6] As the Supreme Court has stated, " '[i]n the absence of some affirmative showing of an intent to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable.' " *Colo. River Water,* 424 U.S. at 808, 96 S.Ct. 1236 (quoting *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). As is clear from the statutory framework of the TCPA and the 1934 Act, discussed above, there is no such irreconcilability between § 1332 and § 227(b)(3); we thus conclude that § 1332 applies to private actions under the TCPA.[7]

### 3. *Legislative History*

Having resolved the textual ambiguity by employing canons of statutory construction, we would not ordinarily consult the TCPA's legislative history. We find it advisable to do so in this case, however, because *Foxhall,* the district court, and the

parties have relied on that history. Nothing in the legislative history undermines our conclusion that Congress did not intend to divest the federal courts of diversity jurisdiction over private TCPA claims.

The Senate Report on the bill noted that state legislation prohibiting unsolicited telemarketing had "had limited effect ... because States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls." S.Rep. No. 102–178, at 3 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1970. The report went on to state that "[f]ederal action is necessary because States do not have the jurisdiction to protect their citizens against those who use these machines to place interstate calls." *Id.* at 5, 1991 U.S.C.C.A.N. at 1973. Similarly, the Report of the House of Representatives indicated that "[m]any states have passed laws that seek to regulate

---

**6.** By contrast, Congress has enacted at least two statutes in other contexts that expressly limit the federal courts' diversity jurisdiction. The Johnson Act, 28 U.S.C. § 1342, states:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

The Tax Injunction Act, 28 U.S.C. § 1341, provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

**7.** The Seventh Circuit in *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446 (7th Cir. 2005), considered whether an action brought under the Class Action Fairness Act (CAFA), Pub.L. 109–2, 119 Stat. 4 (2005), alleging violations of the TCPA, could be removed to federal court. CAFA amended the diversity statute to vest original jurisdiction in the federal courts over class actions in which there is minimal diversity and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). The Seventh Circuit ruled in *Brill* that federal courts have jurisdiction over private TCPA claims under both § 1331 and § 1332. 427 F.3d at 451. In *dicta,* the court stated without any explanation that if § 227(b)(3) did operate to vest "exclusive" jurisdiction in the state courts, "then it knocks out § 1332 as well as § 1331." *Id.* at 450. No other court of appeals has considered whether federal courts have diversity jurisdiction over private rights of action under the TCPA.

telemarketing through various time, place and manner restrictions .... However, telemarketers can easily avoid the restrictions of State law, simply by locating their phone centers out of state." H.R.Rep. No. 102–317, at 9–1 (1991). The bill's Senate sponsor made the following statement in support of the bill:

> The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court.... Small claims court or a similar court would allow the consumer to appear before the court without an attorney.... [I]t would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damage.

137 Cong. Rec. S16204–01, S16205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings).

The legislative history indicates that Congress intended the TCPA to provide "interstitial law preventing evasion of state law by calling across state lines." *See Van Bergen v. Minnesota,* 59 F.3d 1541, 1548 (8th Cir.1995). Congress thus sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps. We see no reason to conclude that, by engaging in such interstitial law-making, Congress sought to restrict TCPA plaintiffs' access to the federal courts where an independent basis of federal jurisdiction exists. Insofar as Congress sought, via the TCPA, to enact the functional equivalent of a state law that was beyond the jurisdiction of a state to enact, it would be odd to conclude that Congress intended that statute to be treated differently, for purposes of diversity jurisdiction, from any other state statute. The reasoning of those district courts that have noted the anomaly that would result if a plaintiff alleging a state-law cause of action for unauthorized telemarketing could sue in federal court on the basis of diversity jurisdiction but a TCPA plaintiff could not do so is thus persuasive.[8] *See, e.g., Kinder v. Citibank,* No. 99 Civ. 2500, 2000 WL 1409762, at *4 (S.D.Cal. Sept. 14, 2000). Moreover, Carnival's interpretation of the statute would preclude the federal courts from exercising supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over TCPA claims. Thus, where a federal court exercised federal question jurisdiction over a claim involving other provisions of the Communications Act or diversity jurisdiction over a claim under a parallel state statute, it could not hear a related TCPA claim.[9] In the absence of a clear expres-

8. It is odd, of course, that a federal court sitting in diversity and considering a TCPA claim would apply federal substantive and procedural law. This fact, however, only emphasizes the *sui generis* nature of the statute. It is the rare federal statute that creates a cause of action that gives rise to jurisdiction under § 1332, but not under § 1331.

9. A parallel state law claim might give rise to diversity jurisdiction where the communication was intrastate but the defendant is none-theless a citizen of, and has its principal place of business in, another state. Moreover, although federal legislators apparently believed that states do not have jurisdiction over interstate calls, it is also *possible* that federal courts would have diversity jurisdiction over state-law claims involving interstate calls and parties of diverse citizenship. This Court is aware of no reasoned legal analysis supporting the belief expressed in the congressional reports that state laws could not reach such unsolicited, interstate advertisements.

sion of congressional intent that federal courts under no circumstances are to hear private TCPA claims, we have neither the authority nor the inclination to countenance such a result.

Finally, although the district court is doubtless correct that Congress intended the TCPA to apply where there is diversity of citizenship between the parties, given the perception that state legislation could not reach interstate calls, *Gottlieb,* 367 F.Supp.2d at 307, it is likely that Congress did not conceive that a private TCPA claim could meet the amount-in-controversy requirement for diversity jurisdiction.[10] Senator Hollings' statement that small claims courts would be the most appropriate fora for TCPA claims indicates that Congress sought to create a forum for cases involving diverse parties and small claims, but did not want to open the federal courts to claims for as little as $500. Although Congress apparently did not conceive that TCPA claims could satisfy the amount-in-controversy requirement, Congress's failure to foresee a circumstance in which diversity jurisdiction could be invoked does not serve as a barrier to federal jurisdiction in the absence of a clear statement of congressional intent to divest the federal courts of diversity jurisdiction. Moreover, if Congress divested the federal courts of federal question jurisdiction because it did not want federal courts to hear cases involving small claims, that concern is not implicated when the amount-in-controversy requirement for diversity jurisdiction is met. *See Accounting Outsourcing, LLC v. Verizon Wireless Personal Comm., LP,* 294 F.Supp.2d 834, 837 (M.D.La.2003) (noting that, in light of the TCPA's legislative history and small statutory damages, Congress viewed state courts as the appro-

priate forum for private causes of action under the TCPA because claims would be small in value); *Biggerstaff v. Voice Power Telecomm., Inc.,* 221 F.Supp.2d 652, 657 (D.S.C.2002) (noting that "Congress likely did not contemplate a potential conflict between § 227(b)(3) and § 1332 because the statutory damages were set at $500, well below the $75,000 amount in controversy," and opining that "it is not evident that Congress wanted the claims to be brought in state court even if they exceeded $75,000 and involved diverse parties").

Having considered the statute's text, structure, history, and purpose, we conclude that Congress did not intend to divest the federal courts of diversity jurisdiction over private causes of action under the TCPA. We thus vacate the judgment of the district court and remand the case. We also vacate the judgment of the district court dismissing Gottlieb's claim under New York General Business Law § 396–aa for lack of supplemental jurisdiction in light of our holding that the district court has diversity jurisdiction over his TCPA claims. We take no position on the district court's alternative ruling on Gottlieb's state law claim other than to note that New York's statute does not, on its face, limit itself in the way the district court, relying on the purpose of the TCPA as expressed in the statute's legislative history, suggested. *See Gottlieb,* 367 F.Supp.2d at 311 (noting that " § 396–aa does not expressly limit its application to claims based on intrastate facsimiles" but concluding that the statute applies only to such communications "in view of Congress's intent that the TCPA extend the reach of state laws by regulating interstate communications").

---

**10.** In order to meet the amount-in-controversy requirement, a single plaintiff would have to receive either 150 faxes from a single defendant, assuming $500 in statutory damages per fax, or 50 faxes from that defendant, assuming treble damages.

## CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.